UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAVIS A. COMUNDOIWILLA,<br><br>           Plaintiff,<br><br>      v.<br><br>M.S. EVANS, et al.,<br><br>           Defendants. | CASE NO. 1:04-cv-06721-LJO-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED<br><br>(Doc. 40)<br><br>OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Lamavis A. Comundoiwilla ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On August 5, 2010, Defendants Alamedia[1] and Woodford filed a motion to dismiss. (Doc. #40.) Defendants Chapman, Lopez, and Todd joined the motion to dismiss on September 1, 2010. (Doc. #43.) Plaintiff filed an opposition on December 2, 2010. (Doc. #50.) Defendants filed a reply on December 13, 2010. (Doc. #51.)

For the reasons set forth below, the Court will recommend that Defendants' motion to dismiss be granted.

**I.      Background**

    **A.      Plaintiff's Claims**

This action proceeds on Plaintiff's second amended complaint filed on July 17, 2009. (Doc. #28.) Plaintiff alleges that he is an orthodox Muslim and his religious beliefs require him to wear

---

[1] Defendant Alamedia is identified as "Alameida" in Defendants' filings.

1

facial hair and shoulder-length hair. However, the California Department of Corrections and Rehabilitations ("CDCR") prohibited inmates from growing facial hair or shoulder-length hair. While incarcerated at the California Correctional Institution in Tehachapi, California ("CCI-Tehachapi"), Plaintiff received a rules violation report ("RVR") on December 16, 2003, because his hair did not conform with prison regulations. Plaintiff was placed on "C status" and lost a number of privileges.

Between December 30, 2003 through September 30, 2004, Plaintiff wrote numerous letters to Defendants Alamedia, Woodford, Evans, Todd, and Lopez informing them of his religious grooming requirements and his belief that CDCR policy violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiff received two more RVRs for failing to comply with CDCR grooming policies in December 2004 and January 2005. Plaintiff was found to have violated the RVRs on February 25, 2005. Plaintiff was placed on C status on March 9, 2005, during a hearing chaired by Defendant Chapman. Plaintiff remained on C status until his transfer to Calipatria State Prison on March 2, 2006.

The Court screened Plaintiff's second amended complaint on February 23, 2010. (Doc. #30.) The Court determined that Plaintiff stated cognizable claims against Defendants Alamedia, Woodford, Evans, Todd, Lopez, and Chapman for violating RLUIPA. Plaintiff seeks monetary damages and declaratory relief.

### B. Defendants' Motion to Dismiss

Defendants argue that this action should be dismissed because they are entitled to qualified immunity and declaratory relief since they have eliminated the grooming policies in dispute and there is no need for any prospective relief. Defendants also argue that Plaintiff cannot recover monetary damages against Defendants in their individual capacities under RLUIPA.

## II. Discussion

### A. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would


have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Questions regarding qualified immunity should be resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity from suit rather than a mere defense to liability. Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving claims of qualified immunity. First, a court must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. If the defendant did not violate a clearly established constitutional right, the defendant is entitled to qualified immunity from plaintiff's claims. Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has since held that the Saucier sequence is not mandatory in all cases and courts may resolve the "clearly established" question first when the Saucier sequence would result in a "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Id. at 818.

### 1. **RLUIPA Violation**

Under most circumstances, the Court should follow the traditional Saucier sequence and decide whether Plaintiff's allegations set forth a violation of Plaintiff's rights before deciding whether the rights at issue were clearly established at the time of Defendants' alleged misconduct. Two factors dissuade the Court from following the traditional sequence in this case.

First, Defendants' motion to dismiss does not contain specific arguments regarding whether Defendants Todd, Chapman, and Lopez's conduct amounts to a violation RLUIPA. Defendants initially filed a motion to dismiss contending that Woodford and Alamedia's conduct did not violate Plaintiff's rights under RLUIPA. Defendants Todd, Chapman, and Lopez joined the motion at a later

date without setting forth any argument regarding whether their conduct violated RLUIPA. Todd, Chapman, and Lopez merely stated that "a ruling granting dismissal of this case against on[sic] any of the grounds stated in the motion should apply with equal force to dismiss this matter against all Defendants." (Notice that Defs. Todd, Chapman, and Lopez Join in Defs.' Pending Mot. to Dismiss 2:1-3, ECF No. 43.) This assertion is incorrect. Although Plaintiff's allegations against Todd and Lopez are similar to his allegations against Woodford and Alamedia, Plaintiff's allegations against Chapman are significantly different from his allegations against the other defendants. Plaintiff only alleges that Defendants Woodford, Alamedia, Todd, and Lopez were informed by letters regarding the alleged RLUIPA violations and failed to intervene. In contrast, Plaintiff alleges that Chapman directly participated in the violations by chairing a committee hearing that placed Plaintiff on C status. Accordingly, if the Court were to conclude that Woodford and Alamedia's conduct did not violate RLUIPA, the finding would not "apply with equal force to dismiss this matter against" Chapman.

Second, Defendants note several ambiguities in Plaintiff's complaint that must be resolved prior to determining whether the allegations amount to a violation of Plaintiff's rights under RLUIPA. Defendants correctly note that Plaintiff does not specifically allege that Woodford or Alamedia actually received or read the letters Plaintiff sent them. Thus, it is unclear whether Woodford or Alamedia were actually aware that Plaintiff was disciplined pursuant to the prison's grooming standards. Defendants also correctly note that it is unclear whether Woodford or Alamedia were the directors of CDCR at the time Plaintiff sent the letters to them. Thus, it is unclear whether Woodford or Alamedia even possessed the authority to intervene or whether they were even state actors at the time of their alleged misconduct.

Accordingly, the Court will forgo the traditional <u>Saucier</u> sequence and will base the qualified immunity determination on whether the right at issue was clearly established. Resolving the question of whether Defendants violated Plaintiff's rights would result in the expenditure of scarce judicial resources on questions that have no effect on the outcome of the case. It would require the Court to order Defendants to submit additional briefs addressing whether Todd, Chapman, and Lopez's alleged conduct violated RLUIPA and would require the Court to order Plaintiff to file an

4

1 amended complaint clarifying his allegations against Woodford and Alamedia. By contrast, resolution of the "clearly established" question would not require these steps because the question can be resolved without addressing Plaintiff's factual allegations against each individual defendant. Thus, the Court will address the "clearly established" question first, as permitted by Pearson.

### 2.   Clearly Established Law

Defendants argue that the law interpreting RLUIPA was not clearly established until the Ninth Circuit rendered its decision in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005) on July 29, 2005. Plaintiff claims that he wrote letters to Defendants Alamedia, Woodford, Evans, Todd, and Lopez between December 30, 2003, and September 30, 2004. The most recent conduct by Defendant Chapman occurred on March 9, 2005, when Chapman allegedly chaired a hearing where Plaintiff was placed on C status. Accordingly, the Court must determine whether Plaintiff's rights under RLUIPA were clearly established when Alamedia, Woodford, Evans, Todd, and Lopez allegedly ignored Plaintiff's letters in late 2004 or when Chapman placed Plaintiff on C status in March 2005.

War soldier, the first major case in this circuit interpreting RLUIPA, concerned a motion for preliminary injunctive relief filed in a RLUIPA lawsuit based on facts similar to the case here. In Warsoldier, a Native American inmate sued the California Department of Corrections alleging that the department's hair grooming policy violated RLUIPA. The Ninth Circuit concluded that the inmate demonstrated that the policy posed a substantial burden on his religious practice and there was evidence that the policy was not the least restrictive means of furthering a compelling state interest. Warsoldier, 418 F.3d at 995-1001.

Defendants argue that they could not reasonably have been on notice that their conduct violated RLUIPA until after Warsoldier was decided. Plaintiff argues that his rights under RLUIPA were clearly established in 2000, the year RLUIPA was passed.

The Ninth Circuit has affirmed grants of summary judgment based on qualified immunity in RLUIPA lawsuits based on conduct that occurred after RLUIPA was passed but before Warsoldier was decided. See Shilling v. Crawford, 377 Fed. Appx. 702, 705 (9th Cir. 2010) ("The conduct at issue here took place in 2003-2004. . . . Major cases interpreting RLUIPA were not decided until

5

after the defendants' [conduct]"); Johnson v. California Dept. of Corrections, 384 Fed. Appx. 625, 626 (9th Cir. 2010) ("The district court properly entered summary judgment on Johnson's claims under the Religious Land Use and Institutionalized Persons Act ('RLUIPA') based on qualified immunity because the pertinent law was not clearly established in 2003 and 2004, at the time the alleged violations occurred"); Johnson v. Woodford, 336 Fed. Appx. 594, 596 (9th Cir. 2009) ("The district court properly granted summary judgment on Johnson's claim under the Religious Land Use and Institutionalized Persons Act ('RLUIPA') based on qualified immunity because the law was not clearly established at the time the violation occurred.").

Defendants have also cited several district court cases in this circuit that have granted qualified immunity to defendants in RLUIPA lawsuits for conduct that occurred after RLUIPA was passed but before Warsoldier was decided.  See David v. Giurbino, 488 F. Supp. 2d 1048, 1059 (S.D. Cal. 2007); Johnson v. CDC, No. CIV. S-0401783 FCD KJM P, 2008 WL 707280, at *3 (E.D. Cal. March 14, 2008); Holley v. California Department of Correction, No. CIV. S-0402006 MCE EFB P, 2007 WL 596907, at *2 (E.D. Cal. Feb. 23, 2007); Watts v. Director of Corrections, No. CV F-03-5365 OWW DLB P, 2006 WL 2320524, at *6 (E.D. Cal. Aug. 10, 2006).

Further, in May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), the Ninth Circuit concluded that regulations affecting religiously mandated hairstyles did not violate RLUIPA's predecessor statute, the Religious Freedom Restoration Act.

The Court will follow the same reasoning in the qualified immunity cases cited above. Defendants' conduct occurred prior to the Ninth Circuit's decisions that defined the contours of prisoners' rights under RLUIPA.  Accordingly, the law was not clearly established at the time of Defendants' conduct.  The Court will recommend that Plaintiff's claims for damages be dismissed based on Defendants' qualified immunity.

**B.     Declaratory Relief**

Although the Court finds that Defendants are entitled to qualified immunity, their immunity from damages does not bar Plaintiff's claims for declaratory relief.  See Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993) ("'Qualified immunity . . . does not bar actions for declaratory or injunctive relief.") (quoting American Fire, Theft & Collision

Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991)). Defendants argue that any claim for prospective relief should be dismissed because there is no case or controversy before the Court. Defendants argue that CDCR amended its regulations to comply with Warsoldier in 2006 and discontinued all disciplinary sanctions against Plaintiff for failing to comply with the prior grooming policies. Thus, there is no longer any conflict between Plaintiff's rights under RLUIPA and CDCR's policies.

However, "[c]ourts are understandably reluctant to declare a case moot based on defendant's voluntary cessation of the challenged activity." America Cargo Transport, Inc. v. U.S., 625 F.3d 1176, 1179 (9th Cr. 2010). "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). "'[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" Id. (quoting City of Mesquite, 455 U.S. at 289 n.10). "[T]he standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Id. (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)).

On the other hand, "[t]he government's change of policy presents a special circumstance in the world of mootness. Of course there is always the possibility of bad faith and a change of heart. But, unlike in the case of a private party, we presume the government is acting in good faith." America Cargo Transport, Inc., 625 F.3d at 1180. "Cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar actions by private parties" and "analogous assurances of discontinuance of the challenged conduct have been held to render challenges moot in other cases." Id. (internal citations and quotations omitted); see, e.g., Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1117 (10th Cir. 2010 (requiring, to deny mootness, "clear showings" of governmental "desire to return to the old ways"); Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328-29 (11th Cir. 2004)

("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."); Ammex, Inc. v. Cox, 351 F.3d 697, 705 (6th Cir. 2003) (noting that cessation of conduct by the government is "treated with more solicitude . . . than similar action by private parties").

Here, CDCR amended the regulations regarding its grooming policies in response to the Warsoldier litigation. Further, CDCR discontinued all sanctions against Plaintiff for refusing to comply with the former grooming policies. Plaintiff does not challenge Defendants' contentions that the policies have been amended and no longer present the same conflict with Plaintiff's rights under RLUIPA. Accordingly, the Court will recommend that Plaintiff's claims for prospective relief be dismissed because they are moot.

### C. Monetary Damages Under RLUIPA

Defendants claim that monetary damages are not available to litigants who raise claims under RLUIPA against state officials in their individual capacity. The availability of monetary damages in RLUIPA claims is an issue that has not been resolved by the Ninth Circuit. However, the Court need not address the issue here because the Court has determined that Plaintiff's claims for monetary damages are barred by Defendants' qualified immunity. Accordingly, the Court will decline to address the issue of monetary damages under RLUIPA.

### D. Other Equitable Relief

Plaintiff argues that declaratory relief is not moot because he has accumulated "classification points" from the RVRs he received for violating the former grooming policies. Those classification points, in turn, prejudice Plaintiff's eligibility for placement in lower custody prisons or other privileges that may be available from Plaintiff's custody hearings.

The Court notes, however, that declaratory relief would not result in the revocation of Plaintiff's classification points as such relief would do nothing more than declare the rights of the parties. Even if Plaintiff were to prevail, declaratory relief would not compel Defendants to revoke the classification points associated with the previous RVRs. To obtain the relief that Plaintiff seeks, he must obtain equitable relief in the form of an injunction ordering Defendants to revoke the classification points. Plaintiff's complaint did not seek any equitable relief. Plaintiff only sought

monetary damages which are barred by the doctrine of qualified immunity, and declaratory relief which is barred because prospective relief is rendered moot by CDCR's amendment of the grooming policies.

Since Plaintiff's complaint does not raise any claims for equitable or injunctive relief, the complaint must be dismissed on the basis of qualified immunity and mootness. However, the Court will recommend that Plaintiff be given an opportunity to amend his complaint to raise claims for equitable relief.

In providing Plaintiff an opportunity to amend his complaint, the Court is not suggesting that a claim for equitable relief based on the facts alleged by Plaintiff would be cognizable. That issue has not been adequately briefed before the Court.

Defendants suggest that a claim for equitable relief would be barred by Heck because it would "necessarily imply the invalidity of [Plaintiff's] punishments for rules violations." (Defs.' Reply in Supp. of Mot. to Dismiss 6:14-16, ECF No. 51.) However, Heck only bars civil suits that would necessarily imply the invalidity of an inmate's "conviction or sentence." See Heck v. Humphrey, 512 U.S. 477, 483-87 (1994); see also Edwards v. Balisok, 520 U.S. 641, 648 (1997). A civil suit revoking Plaintiff's classification points would be unrelated to Plaintiff's conviction and neither side has alleged that the revocation of the classification points would alter the duration of Plaintiff's sentence. Accordingly, the relief sought would not be barred by Heck. See Foman v. Davis, 371 U.S. 178, 182 (1962) (factors that may justify denying leave to amend include "futility of amendment").

Nothing else in the record suggests that granting Plaintiff leave to amend would be futile.[2] Although the deadline for amending the pleadings has passed, the Court finds good cause to modify the scheduling order to permit Plaintiff to amend given Plaintiff's pro se status and the fact that Plaintiff's possibly meritorious claims would be lost if he were unable to amend. Accordingly, the Court will recommend that Plaintiff be given an opportunity to file an amended complaint seeking equitable relief under his RLUIPA claims.

---

[2] Defendants have the opportunity to demonstrate the futility of Plaintiff's amended complaint by filing objections to these findings and recommendations.

9

### III.     Conclusion and Recommendation

The Court finds that Defendants are entitled to qualified immunity and are therefore immune from liability for civil damages.  The Court further finds that Plaintiff's claims for prospective relief should be denied because Defendants' voluntary conduct renders the issue moot.  The Court recognizes, however, that Plaintiff may have a viable claim for equitable relief based on the classification points he has accumulated from the RVRs he received for violating CDCR's former grooming policy.  Accordingly, the Court will recommend that Plaintiff be given an opportunity to file an amended complaint raising claims for equitable relief.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be GRANTED;
2. Plaintiff's second amended complaint be DISMISSED; and
3. Plaintiff be given an opportunity to file a third amended complaint raising claims for equitable relief.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     February 4, 2011**                                /s/ Sheila K. Oberto
                                                                                UNITED STATES MAGISTRATE JUDGE